**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OLD YORK LLC** *Plaintiff* | : | **CIVIL ACTION** |
| | : | **NO. 16-1731** |
| **v.** | : | |
| **TOWNSHIP OF ABINGTON, *et al.*** *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J. FEBRUARY 16, 2017

# MEMORANDUM OPINION

## INTRODUCTION

Presently before this Court is a *motion to dismiss, or alternatively for summary judgment*, [ECF 21], filed by Defendants Township of Abington ("Township") and Kenneth J. Clark ("Defendant Clark") (collectively, "Defendants"), in which they seek dismissal of all of the federal and state claims asserted against them by Plaintiff Old York LLC ("Plaintiff"). Plaintiff has opposed the motion. [ECF 24]. The issues raised in the motion to dismiss/for summary judgment have been fully briefed by the parties and are now ripe for disposition. For the reasons stated herein, Defendants' motion is granted, *in part*, and denied, *in part.*

## BACKGROUND

On April 11, 2016, Plaintiff filed its initial complaint against Defendants. [ECF 1]. Following the filing of a motion to dismiss and the parties' respective briefing thereon, Plaintiff filed a motion for leave to file an amended complaint, which this Court granted. [ECF 17-18]. On September 22, 2016, Plaintiff filed an amended complaint asserting civil rights claims based on Defendants' alleged violation of Plaintiff's due process and equal protection rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 26 of the

Pennsylvania Constitution, as well as state law claims for intentional interference with contractual relations, defamation, and trade disparagement. [ECF 19].

On October 7, 2016, Defendants filed the underlying motion to dismiss, or alternatively, for summary judgment. [ECF 21].[1] When ruling on Defendants' motion to dismiss, this Court must accept, as true, all relevant and pertinent factual allegations in the amended complaint and construe these facts in the light most favorable to Plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). These factual allegations are as follows:

> Plaintiff is the owner of a multi-story apartment complex in Abington, Pennsylvania, formerly known as the Colonade and now known as 100 York (the "Colonade"). (Amend. Compl. Introduction). The Colonade consists of two high-rise residential buildings, the Estate and the Manor buildings. (*Id*. at ¶¶9-10). Plaintiff is engaged in a $26 million multi-stage rehabilitation and renovation project at the Colonade. (*Id*. at ¶11). Renovations are complete in all of the apartment units in the Estate building, and the Township has issued 286 "Certificates of Occupancy" for those units. (*Id*. at ¶75). Plaintiff alleges that despite issuing Plaintiff these "Certificates of Occupancy" for apartment units in the Colonade, the Township has subsequently taken the wrongful position that the units may not be occupied unless and until Plaintiff is issued "Use and Occupancy Permits," which the Township suggests are different than the admittedly issued Certificates of Occupancy.
>
> Plaintiff contends that its dispute with the Township began in 2014, when Plaintiff attempted to begin the renovation of the Colonade. (*Id*. at ¶14). At that time, Defendant Clark, who is the fire marshal for Abington Township, demanded that Plaintiff install sprinklers throughout both buildings and/or substantially upgrade its fire alarm system, otherwise he would not approve the issuance of Certificates of Occupancy for the renovated apartment units. (*Id*. at ¶16). Plaintiff disagreed that such measures were required or necessary. (*Id*. at ¶¶17-18). Defendant Clark threatened Plaintiff with various enforcement actions unless Plaintiff capitulated to his demands. (*Id*. at ¶22).
>
> Ultimately, Plaintiff and the Township reached an agreement which was memorialized in a Memorandum of Understanding (the "MOU"), on November 4,

---

[1] Though Defendants filed their underlying motion as both a motion to dismiss and, in the alternative, a motion for summary judgment, this Court will consider it only under Rule 12(b)(6), and not as a motion for summary judgment. Though Rule 12(d) permits a court to convert a motion to dismiss into one for summary judgment, this Court declines to do so here, where Plaintiff has not yet been given an opportunity to conduct discovery to challenge Defendants' proffered evidence.

2014. (*Id*. at ¶25). The MOU describes its purpose as: "[t]he parties . . . have entered into this MOU to resolve and settle ongoing disputes regarding code and permit requirements for the upgrades and improvements which Old York plans to undertake for the Colonade apartment complex." (*Id*. at ¶26). As part of the parties' agreement, Plaintiff agreed to exceed Code requirements by upgrading the Colonade's fire alarm system. (*Id*. at ¶29). The MOU sets forth the scope of the work to be undertaken at the Colonade and all steps that Plaintiff must take from start to finish in order to occupy the Colonade. (*Id*. at ¶¶26-32).

Since the parties entered into the MOU, the Township and Defendant Clark have continued to insist that Plaintiff meet other demands that Plaintiff contends are not required by any applicable code or the MOU. (*Id*. at ¶¶33- 48). In the spirit of cooperation, Plaintiff has met some of Defendant Clark's demands, but Plaintiff's efforts to placate Defendant Clark have been unsuccessful. (*Id*. at ¶¶42-48).

On February 18, 2016, and again on March 30, 2016, Plaintiff's counsel advised the Township's solicitor by phone that Plaintiff was going to move residents into the Colonade. (*Id*. at ¶89). The solicitor did not advise that the building could not be occupied, or that any additional permit or certificate was required for occupancy. (*Id*.).

On April 7, 2016, Defendant Clark responded to a call at the Colonade made by a resident who smelled smoke. (*Id*. at ¶49). Plaintiff alleges that Defendant Clark intentionally misrepresented to the tenant that the Colonade did not have any Certificates of Occupancy, including for the unit in which the resident was living. (*Id*. at ¶50). This statement was not true since the Township had issued over 280 Certificates of Occupancy for the Colonade. (*Id*.). Defendant Clark also misrepresented that the tenant was not allowed to live in the Colonade, (*id*. at ¶51), and demanded that the tenant leave the building, which he characterized as unsafe. (*Id*. at ¶52). Defendant Clark escorted the tenant out of the building. (*Id*. at ¶53). The next day, Defendant Clark told the resident that "it will be a long time" before occupancy is permitted at the Colonade, and she should therefore "find somewhere else to live." (*Id*. at ¶57). As a result of Defendant Clark's wrongful eviction of the tenant, Plaintiff paid for a hotel room and other expenses for the resident for a month until she eventually terminated her lease and moved elsewhere. (*Id*. at ¶58). Defendant Clark issued a report regarding the April 7, 2016 fire at the Colonade, which Plaintiff alleges contained several false statements. (*Id*. at ¶61).

On April 8, 2016, the Township's zoning officer, Mark Penecale, sent Plaintiff a letter indicating that no unit in the Colonade is "permitted to be occupied until such time that a Use & Occupancy Certificate has been issued by the Township of Abington." (*Id*. at ¶74). Mr. Penecale pointed to Section 1105 of the Zoning Ordinance of the Township of Abington as requiring such a "Use and Occupancy Certificate." (*Id*.). Plaintiff contends Mr. Penecale's position is

wrong and contrary to previous representations of the Township. (*Id*. at ¶75). In particular, Plaintiff points to the Township's issuance of Certificates of Occupancy for 280 units. (*Id*.). According to Plaintiff, this was the first time the Township had ever suggested the need for a Use and Occupancy Certificate, in addition to the already issued Certificates of Occupancy. (*Id*.). Plaintiff also argues that Section 1105, on which Defendants rely, does not apply to Plaintiff's renovation project. (*Id*.).

After Plaintiff filed this action, its counsel conferred with the Township's counsel about what issues, if any, the Township truly believed needed to be addressed prior to occupancy. (*Id*. at ¶91). The Township initially identified ten issues which were later narrowed to two after consulting with its Code expert, Michael Perrone, who is also a Fire Marshal. (*Id*. at ¶¶92-94). The Township's positions on all ten issues, as of April 26, 2016, are memorialized in a document titled the Open-Issues List. (*Id*. at ¶¶93-94). Plaintiff alleges that as of April 26, 2016, the parties reached agreement that none of the ten issues identified by the Township were barriers to occupancy. (*Id*.). On May 2, 2016, the Township submitted a filing in this action contradicting the positions it and its expert had taken with the respect to the Open-Issues List. (*Id*. at ¶101).

On June 3, 2016, Plaintiff filed a mandamus action against the Township in the Montgomery County Court of Common Pleas. (*Id*. at ¶103). In that case, Plaintiff filed an emergency motion for a preliminary injunction on June 6, 2016. (*Id*.). To resolve the emergency motion, the parties agreed to a consent order permitting occupancy, which was entered on August 3, 2016. (*Id*. at ¶104). According to Plaintiff, this consent order is nearly identical to the Open-Issues List in substance, thus, showing that the Township acted in bad faith when it reneged on the Open-Issues List in April 2016. (*Id*. at ¶105).

Plaintiff also alleges that the Township has treated Plaintiff differently than it treated a similarly situated apartment, the Plaza Apartments (the "Plaza"). (*Id*. at ¶116). Plaintiff alleges that the Colonade and the Plaza are similar in that: they are both high-rise apartment complexes in Abington Township; both underwent recent extensive multi-million dollar renovations; neither have sprinkler systems installed through the complexes; and both are subject to the same Codes and Township ordinances regulating occupancy and construction requirements. (*Id*. at ¶111). Despite these similarities, Plaintiff alleges that the Township imposed a number of requirements and restrictions that it did not impose on the Plaza. (*Id*. at ¶¶121-122).

**LEGAL STANDARD**

A court may grant a motion to dismiss an action under Federal Rule of Civil Procedure 12(b)(6) if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ.

P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief: it must "show such an entitlement with its facts." *Id*. (citations omitted).

To determine the sufficiency of a complaint, "a court . . . must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While a complaint need not assert detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

A court may determine that a complaint's factual allegations are plausible if the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (citations omitted). Reviewing the plausibility of the complaint is a "context-specific" inquiry and requires a court to "draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

**DISCUSSION**

As noted, Plaintiff asserts that Defendants violated Plaintiff's substantive due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, §26 of the Pennsylvania Constitution, as well as state law claims for intentional interference with contractual relations, defamation and trade disparagement. In their motion to dismiss, Defendants argue that the claims should be dismissed because Plaintiff has failed to allege facts sufficient to state a claim. Plaintiff's claims and Defendants' arguments in opposition thereto are addressed *infra*.

***Substantive Due Process Claims***

At Counts I and II of the amended complaint, Plaintiff purports to assert claims for the violation of its substantive due process rights under the United States and the Pennsylvania Constitutions. Defendants have moved to dismiss these substantive due process claims on the

ground that Plaintiff has not alleged facts sufficient to meet the requisite "shocks the conscience" standard. This Court agrees.[2]

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law." The clause "contains a substantive component that bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." *MFS, Inc. v. DiLazaro*, 771 F. Supp.2d 382, 438 (E.D. Pa. 2011) (quoting *Zinermon v. Burch*, 494 U.S. 113 (1990)). To state a substantive due process claim, a plaintiff must adequately plead that (1) the property interest at issue is protected by the Fourteenth Amendment, and (2) the plaintiff was deprived of that interest by conduct of a governmental official or entity which "shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *see also United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 399-401 (3d Cir. 2003).

Only "the most egregious official conduct" can meet the "shocks the conscience" standard. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). Government actions that are merely taken for an "improper purpose" or in "bad faith" do not meet the requisite standard. *Johnston v. Dauphin Borough*, 2006 WL 1410766, at *6 (M.D. Pa. May 22, 2006) (citing *United Artists*, 316 F.3d at 400-02). "Unless the evidence indicates that the challenged decision is completely unrelated in any way to a rational [governmental] goal, there is no violation of substantive due process." *Corneal v. Jackson Twp., Huntingdon Cnty., Pa.*, 313 F. Supp.2d 457, 466 (M.D. Pa. 2003). In other words, where the governmental entity may point to some rational goal for its conduct, there is no due process violation. *Id*. In the land use context,

2 The parties agree that Plaintiff's state and federal due process and equal protection claims are subject to the same legal analysis. *See Kramer v. Workers' Comp. Appeal Bd*., 883 A.2d 518, 532 (Pa 2005); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist*., 908 F. Supp.2d 597, 618 (M.D. Pa. 2012).

the shocks the conscience standard is sufficiently high "to avoid converting federal courts into super zoning tribunals." *Eichenlaub*, 385 F.3d at 285; *see also United Artists*, 316 F.3d at 402 (recognizing that the shocks the conscience standard "prevents [the Court] from being cast in the role of a zoning board of appeals").

Here, Plaintiff's substantive due process claims are governed by the *Eichenlaub* decision. "In *Eichenlaub*, the Court of Appeals held that allegations of inconsistent application of zoning requirements, unnecessary inspections, delaying permits and approvals, improperly increasing tax assessments, and 'malign[ing] and muzzl[ing]' a property owner were not enough to shock the conscience, particularly where '[t]he local officials are not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group.'" *Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 65 (3d Cir. 2013) (quoting *Eichenlaub*, 385 F.3d at 286). In affirming the district court's finding that the alleged conduct did not shock the conscience, the *Eichenlaub* Court also noted the absence of any allegations of corruption or self-dealing. *Eichenlaub*, 385 F.3d at 286.

Like the claims in *Eichenlaub*, Plaintiff's claims here are of the kind frequently at issue in zoning and land use disputes. As in *Eichenlaub*, Plaintiff merely complains of Defendants' alleged incorrect, inconsistent application of various zoning laws and regulations. Plaintiff does not allege any corruption or self-dealing, racial or ethnic bias, or an effort by Defendants to interfere with otherwise constitutionally protected activity. As such, like the conduct at issue in *Eichenlaub*, the conduct alleged here does not meet the shocks the conscience standard. Accordingly, Plaintiff's substantive due process claims are dismissed. *Cf.*, *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (affirming trial court's granting of motion to

dismiss where plaintiff's complaints amounted to mere disagreement with township defendant's application of land use regulations).

***Equal Protection Claims Against the Township***

At Counts I and II, Plaintiff also asserts claims for the violation of its equal protection rights. Specifically, Plaintiff contends that Defendants violated Plaintiff's equal protection rights by treating it differently than Defendants treated another similarly situated entity/apartment building with respect to inspections, permits, etc. In their motion to dismiss, Defendants argue that Plaintiff has failed to allege facts sufficient to meet each pleading requirement of an equal protection claim against the Township.[3] This Court disagrees.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV §1. To state an equal protection claim under a class of one theory (as Plaintiff purports to do here), a plaintiff must allege facts to show that the plaintiff was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "To be 'similarly situated,' parties must be 'alike in all relevant aspects.'" *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)).

Here, Plaintiff contends that the Township treated Plaintiff differently than another similarly situated apartment building, specifically, the Plaza, without any rational basis. With respect to the two buildings' similarities, Plaintiff alleges that: both are high-rise apartment

[3] Notably, Defendants limit this argument to the equal protection claims asserted against the Township only. As such, this Court will similarly limit its analysis to the equal protection claims against the Township.

buildings within Abington Township; both have undergone recent extensive multi-million dollar renovations which involved upgrading and modernizing the apartment units; neither building has sprinkler systems installed throughout the complexes; and both are subject to the same codes and Township ordinances regulating occupancy and construction requirements. (Am. Compl. ¶111). Despite these similarities, Plaintiff alleges that the Township treated the two entities differently by requiring far more of Plaintiff than of the Plaza, with respect to meeting numerous zoning, construction and occupancy requirements. (*Id.* at ¶¶116-122). While the Township seeks to refute these allegations with an attached declaration, the facts alleged in the amended complaint, and accepted as true, are sufficient to sustain Plaintiff's equal protection claims against the Township. In addition, whether the Township had a rational basis for its alleged different treatment is an issue of fact that cannot be resolved at the motion to dismiss stage. *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 481 (M.D. Pa. 2012). As such, Defendants' motion to dismiss Plaintiff's equal protection claims against the Township is denied.

***Qualified Immunity for Defendant Clark***

Defendants argue that Defendant Clark is entitled to qualified immunity on Plaintiff's constitutional claims against him.[4] Qualified immunity is an affirmative defense that shields government officials from personal liability for civil damages. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). "Under this doctrine, courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was 'clearly established' at the time of the challenged conduct.'" *Id*. (citations omitted).

---

[4] As set forth above, this Court has dismissed Plaintiff's due process claims against all Defendants, but not Plaintiff's equal protection claims against the Township and Defendant Clark. As such, this Court will limit its analysis of the qualified immunity defense to the equal protection claim against Defendant Clark.

When evaluating a claim of qualified immunity, district courts must engage in a two-pronged inquiry. First, the court must determine whether the allegations, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must determine "whether the law was clearly established at the time of the violation." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Under this second prong, the "focus is on whether the law, at the time of the challenged incident, is sufficiently clear to 'provide[] fair warning to the defendants that their alleged conduct was unconstitutional.'" *Muth v. Woodring*, 2016 WL 6694546, at *2 (3d Cir. Nov. 15, 2016) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). It is the defendant's burden to establish that he is entitled to qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

In their motion to dismiss, Defendants argue that Defendant Clark is entitled to qualified immunity because Plaintiff has failed to allege facts sufficient to establish that Defendant Clark violated a constitutional right to equal protection. In its response, Plaintiff premises its argument on the same facts alleged in support of its due process claim against Defendant Clark; a claim dismissed above. Plaintiff cites no facts that could support its remaining equal protection claim against Defendant Clark. Indeed, Plaintiff's amended complaint contains no facts to support an equal protection claim against Defendant Clark. Rather, all of the facts alleged with respect to the alleged violation of Plaintiff's equal protection rights are directed at the actions and conduct of the "Township." (*See* Amend. Comp. ¶¶116-125). Plaintiff has not alleged any facts to support any disparate treatment by Defendant Clark. While this Court's ruling is not on a qualified immunity defense, because Plaintiff has failed to allege any facts to support a violation

of its equal protection as to Defendant Clark, Plaintiff's equal protection claim against Defendant Clark is dismissed.

***State Law Claims against Township and Defendant Clark, in his Official Capacity***

In its amended complaint, Plaintiff asserts the following state law tort claims against both Defendants: intentional interference with contractual relations; defamation; and trade disparagement. In their motion to dismiss, Defendants argue that they are immune from liability with respect to each of these state law intentional tort claims under the Pennsylvania Political Subdivision Tort Claims Act (the "Act"), 42 Pa. C.S. 8541, *et seq*. Plaintiff does not respond to this argument. Regardless, subject to limited exceptions not implicated here, the Act grants local agencies, and their employees, when sued in their official capacities, absolute immunity against intentional tort claims. *Walker v. North Wales Borough*, 395 F. Supp.2d 219, 230 (E.D. Pa. 2005). As such, all of Plaintiff's state law tort claims against the Township and Defendant Clark in his official capacity (Counts III through V) are dismissed.

***State Law claims against Defendant Clark, in his Individual Capacity***

Plaintiff also asserts its state law tort claims against Defendant Clark, in his individual capacity. Each of the state law claims against Defendant Clark is premised upon the same alleged facts: that during the night of April 7-8, 2016, Defendant Clark intentionally misrepresented to Plaintiff's tenant, Erica Johns, that the Colonade did not have Certificates of Occupancy when, in fact, it did, causing her to terminate her lease. (Amend. Compl. ¶¶159, 165, 172). Defendants argue that these claims as asserted against Defendant Clark fail because: (1) Defendant Clark's statements were true; (2) Defendant Clark lacked the intent to harm Plaintiff; (3) Plaintiff has not alleged special damages; and (4) Defendant Clark's statements are subject to various privileges. This Court finds that each of these defenses, however, is subject to one or

more disputed issues of fact, which must await later consideration. As such, Defendants' motion to dismiss these state law claims asserted against Defendant Clark, in his individual capacity, is denied.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss is granted, *in part*, and denied, *in part*, leaving the following claims for further proceedings: Plaintiff's equal protection claims against the Township and the state law tort claims asserted against Defendant Clark in his individual capacity. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.